

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

JAN 2 0 2005

Michael N. Milby, Clerk

| | | |
|---|---|---|
| JESSICA AND KEVIN HAFSTIENN INDIVIDUALLY AND AS NEXT FRIEND OF TAYLOR HAFSTIENN, DECEASED | § § § § § | |
| VS. | § § | NO. H-03-1646 |
| BMW OF NORTH AMERICA, L.L.C. AND BAYERISCHE MOTOREN WERKE AG | § § § § | |

### DEFENDANT BMW OF NORTH AMERICA, LLC AND BAYERISCHE MOTOREN WERKE AG'S OPPOSED MOTION TO EXCLUDE EXPERT TESTIMONY OF GERALD ROSENBLUTH

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Now come BMW OF NORTH AMERICA LLC and BAYERISCHE MOTOREN WERKE AG ("BMW"), Defendants in the above-styled and numbered cause, and file this their opposed motion to exclude the testimony of Plaintiffs' purported expert on spot welds, Gerald Rosenbluth. In support of their motion to strike Rosenbluth's testimony, BMW would respectfully show the Court as follows:

### I. INTRODUCTION

This case arises from a two-car automobile accident that allegedly occurred on September 16, 2000, in The Woodlands, Texas. At that time, Plaintiff Jessica Hafstienn was driving her 1999 BMW 323i with her son Taylor Hafstienn as a passenger. At the intersection of Grogan's Mill Road and Millpark Drive, Jessica Hafstienn failed to yield right-of-way and was violently struck on the side by a Sierra GMC pick-up truck driven by Ross Hardin. According to the police report, Hardin's pick-up was traveling over 70 miles per hour in a 45

mile per hour zone at the time of impact. Plaintiffs have sued BMW of North America, LLC and Bayerische Motoren Werke AG under a variety of theories including negligence and products liability. Plaintiffs have designated Gerald Rosenbluth to testify regarding spot welds in the BMW 323i.

## II.   ARGUMENT AND AUTHORITIES

### A.   Standards Governing Admissibility of Expert Opinions

In *Daubert v. Merrill Dow Pharmaceuticals. Inc.*, 509 U.S. 579 (1993), the United States Supreme Court addressed the principles applicable to determining the admissibility of opinion testimony offered by expert witnesses under the Federal Rule of Evidence 702. *Daubert*, 509 U.S. at 589. Rule 702 allows a qualified expert to testify "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702. An expert's testimony must rest both on a reliable foundation and be relevant to the task at hand. *Daubert*, 509 U.S. at 597. If an expert's testimony is not based on reliable scientific knowledge, or if it is based on such knowledge but fails to relate to any material facts, then it is not useful and, therefore, not relevant. The proponent of the evidence bears the burden of establishing its admissibility by a preponderance of the evidence. *Id.* at 593.

The trial court has the obligation and broad discretion to be the "gatekeeper" in determining the reliability and relevance of the proposed evidence. *Kumho Tire Co., Ltd., v. Carmichael*, 526 U.S. 137, 141 (1999). As gatekeeper, the trial court must make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. *Id.* at 152. In fulfilling its obligation as gatekeeper, the trial

court must conduct a two-tier analysis of the expert's work. The first tier of the analysis requires an examination of the reliability of the expert testimony, based on: (1) the qualifications of the expert;; and (2) the grounds upon which the expert bases his opinion. *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997), *citing Cummins v. Lyle Indus.*, 93 F.3d 362, 367 (7th Cir. 1996). The focus is on whether the reasoning or methodology underlying the testimony is scientifically valid and can be properly applied to the facts in issue. *Daubert*, 509 U.S. at 592-93, 113 S. Ct. at 2796. Rule 702 provides guidelines to aid the trial court in ascertaining the validity of the opinion: (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methodology; and (3) the witness has applied the principles and methodology reliably to the facts of the case. FED. R. EVID. 702; *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371-72 (5th Cir. 2000); *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 n. 1 (4th Cir. 2001). Other non-exclusive factors include: (1) whether the theory has been/can be tested; (2) whether the theory has been subjected to peer review and publication; (3) the potential or known rate of error; (4) whether the theory has been generally accepted; (5) whether the theory is from litigation or naturally flowed from research; (6) whether other alternative explanations have been ruled out; and (7) whether the proposed expert sufficiently connected the proposed testimony with the facts of the case. *Lauzon v. Senco Prod., Inc.*, 270 F.3d 681, 686-87 (8th Cir. 2001).

In the second tier of *Daubert* analysis, the trial court must also determine that the testimony "fits" the case before it; that is, the evidence will assist the trier of fact by being relevant to the issues raised in the case. FED. R. EVID. 702; *Daubert*, 509 U.S. at 591-92; 113 S. Ct. at 2795-96. As the Fifth Circuit Court of Appeals has explained, "the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument.

Indeed, the premise of receiving expert testimony is that it will assist the trier of fact to understand the evidence or to determine a fact in issue." *In re Air Crash Disaster at New Orleans, La.*, 795 F.2d 1231, 1233 (5th Cir. 1986). The expert must testify to something more than what is obvious to a layperson to be of any assistance to the jury. *Ancho v. Pentek Corp.*, 157 F.3d 512, 519 (7th Cir. 1998). Just because a witness is an expert in one field does not mean that the expert may testify in all aspects and specialties of that field. *See Wilson v. Woods*, 163 F.3d 935, 937-38 (5th Cir. 1999) (fire reconstruction and investigation specialist was not allowed to testify regarding automobile reconstruction); *Perkins v. Volkswagen of Am., Inc.*, 596 F.2d 681, 682 (5th Cir. 1979) (mechanical engineer who had no experience designing automobiles was not allowed to testify as an expert on automobile design).

**B.     Rosenbluth's Testimony Should Be Excluded**

Gerald Rosenbluth is a professional witness who has no special knowledge regarding automobile design and manufacture and was held in contempt by a federal court in Illinois for violating a protective order.[1] (Ex. A at pp. 27-28, 35-36). In the past 10 years, he has been employed about 10 – 22 times by the Provost Umphrey firm to testify on behalf of the Plaintiffs, and 100% of his income is from working as an expert in litigation. (Ex. A at pp. 37, 163). Rosenbluth is not qualified to testify, and his opinions are nothing more than speculation. He should not be permitted to testify in this matter.

**1.     Rosenbluth lacks qualifications to testify.**

Rosenbluth is not qualified to testify regarding any facts of the accident underlying this case. He has never worked as a professional engineer and thus lacks any engineering experience. Rosenbluth is not a professional licensed engineer in the State of Texas or in any

---

[1] Deposition of Gerald Rosenbluth is attached as "Ex. A."

other state. (Ex. A at p. 54). He does not hold any patents on any automobile components, automobiles, or products sold in the market. (Ex. A at pp. 55-57). He is also not an accident reconstructionist and has never worked as a law enforcement officer in the State of Texas or with the Texas DPS. (Ex. A at pp. 54, 57). Rosenbluth is not a biomechanical engineer, has no degrees in automobile engineering or mechanical engineering, and does not hold a Ph.D. in any field. (Ex. A at pp. 55-57). In fact, no employees of his company are engineers. (Ex. A at p. 56).

Rosenbluth tried to apply to the doctoral study program at Arizona State, but he was rejected since he did not qualify for the program. (Ex. A at p. 74). His only knowledge regarding physics is from taking one basic physics course in the 1960's. (Ex. A at pp. 69-70). He has never taken any courses in structural analysis or stress analysis or any that required him to calculate or compute the strength of a given material on a given application. (Ex. A at p. 163). He has also never conducted a study or survey regarding consumer expectations. (Ex. A at p. 160).

Rosenbluth has never published any materials in his field. (Ex. A at pp. 57, 58). He has never presented any papers to the Society of Automotive Engineers, nor has he published in any of their journals. (Ex. A at p. 68). He has never been invited to give any speeches to the SAE and has not held any positions in that group as an officer. (Ex. A at p. 68). In fact, Rosenbluth has never published any literature in any field whatsoever. (Ex. A at p. 68).

Rosenbluth lacks any knowledge or experience regarding automobile design and manufacture. He has never worked as an automobile engineer or in any other position for a company which is engaged in the business of designing, manufacturing, or assembling automobiles. (Ex. A at pp. 54, 58). He has no experience in designing an automobile or any of

its components. (Ex. A at pp. 55-58). He has never observed a BMW go through the manufacturing process. (Ex. A at p. 68). The only time that he was even in an automobile manufacturing plant was 20 years ago, when he twice observed the assembly line of an automobile manufacturer at General Motors in St. Louis, Missouri. (Ex. A at p. 68).

Rosenbluth also has no experience at all in designing welding locations, welding materials, nugget sizes or diameters for spot welds for a production model vehicle. (Ex. A at p. 80). He has never been responsible for determining the types of metals or welds or welding locations for any production automobile manufacturer (Ex. A at p. 69). He did not even know what types of welds the subject vehicle, the BMW 323i, had in its structure. (Ex. A at pp. 151-154).

Rosenbluth is not an engineer and has no experience designing, manufacturing, or marketing automobiles, the placement of welding locations, or the strength of spot welds. Without independent knowledge outside of the litigation context regarding automobile manufacture and design, Rosenbluth cannot qualify as an expert regarding the marketing, design, and manufacture of automobiles. *See London v. MAC Corp. of Am.*, 44 F.3d 316, 318 (5th Cir. 1995) (witness who was not an engineer did not have the expertise to address design of the shredder at issue, its operation, or the function and use of its parts). Rosenbluth is not qualified to testify and should not be permitted to present his opinion to the jury.

2.  **Rosenbluth's methodology is unreliable.**

Rosenbluth's opinions are not only flawed, but the data that he relies upon is also unreliable. Rosenbluth's inspection of the BMW consisted of observing fifty-five of the approximately 4,700 spot welds on the subject BMW 323i vehicle and measuring their distance to the edge of the metal. (Ex. A at pp. 85, 133). Of the fifty-five spot welds, Rosenbluth found

345118.1                                                6

twenty-six he considered defective. (Ex. A at p. 125). Rosenbluth concluded that the spot diameters or nugget diameters of all fifty-five spot welds met the specifications. (Ex. A at p. 104). Instead, he only found that these twenty-six spot welds were located too close to the edge of the metal sheet and that five of these straddled the metal sheet. (Ex. A at pp. 125-128). Rosenbluth arrived at these conclusions by measuring the edge distance of the spot welds and comparing this number to the BMW specifications for the subject 323i vehicle and measuring twenty spot welds out of the thousands on an "exemplar" 1994 BMW 318i model. (Ex. A at pp. 111, 133-135, 138). Rosenbluth did not have access to the 1994 318i vehicle specification and assumed that the specifications for the 1994 318i vehicle would be the same for the 1999 323i vehicle at issue. (Ex. A at p. 111). From measuring fifty-five spot welds out of more than 4,700 on the subject 1999 323i vehicle and 20 out of the thousands on the exemplar 1994 318i vehicle, Rosenbluth concluded that the spot welds on the 323i were manufacturing defects capable of causing a vehicle to break into half if it was hit at any speed. (Ex. A at p. 115).

Rosenbluth's methodology is not based upon any peer-reviewed methods or theories and does not account for the facts of this case. For example, Rosenbluth could not identify any article or other peer-reviewed publications which has published such methodology. (Ex. A at pp. 164-165). He did not conduct a study or test his theory that a few supposedly misaligned welds out of thousands could cause a vehicle to come apart and break into two pieces, regardless of any other forces on the vehicle. (Ex. A at pp. 154, 155-156, 166). He had not performed any calculations regarding the strength of the welds and could not quantify how much the structural integrity of a vehicle would be compromised under his theory. (Ex. A at pp. 169-170). He also merely assumed and did not verify that the specifications for the

"exemplar" 1994 318i vehicle and the subject 1999 323i vehicle would be the same. (Ex. A at p. 111).

Rosenbluth also could not justify his method of measuring the location of the spot welds. (Exh. A at p. 138). He assumed that the method of measuring the edge distance of a spot weld, or the location of a spot weld relative to the edge of two sheets of metal, was to use the thicker of two pieces of metal. (Ex. A at pp. 133-134). This method of measurement is not widely accepted and is found nowhere in any published material, including the vehicle specification for the subject BMW model 323i vehicle. (Ex. A at pp. 134-135, 138).

In sum, Rosenbluth could not identify an independent and unbiased, scientific source for his methodology. (Ex. A p. 164). Rather, he parroted the conclusions of Rex B. McLellan to justify his methodology and opinion. For example, he stated that the basis of his knowledge regarding the method of measuring the edge distance of the spot welds was McLellan's knowledge. (Ex. A at p. 135). In fact, although he was named as an expert regarding spot welds, he stated he would "defer to Rex [McLellan] on that issue" when asked to locate in the BMW specifications the statement that the edge distance was to be measured on the thicker metal piece. (Ex. A at pp. 133-135).

Rosenbluth further failed to conduct any testing of his theory and opinion. For example, he did not evaluate the elasticity or plasticity of the 1999 BMW 323i, did not analyze the number of welds which would have to be placed in too close of proximity of an edge in order to allow a vehicle to split apart when it is struck at 73 miles per hour, and did not even determine what kind of welds were on the subject vehicle (classes A, B, or C). (Ex. A at pp. 124-125, 151-153). Without having bothered to test his theory, he concluded without accounting for the speed and weight of the truck that struck the Hafstienn vehicle that a single

edge weld that does not meet specification would compromise the strength of the weld and that this caused the Hafstienn vehicle to break in half. (Ex. A at pp. 154, 169).

Rosenbluth lacks any knowledge regarding spot weld strength, design location, or automobile manufacture and design. (Ex. A at p. 88). He cannot compare the number of welds on the subject 1999 323i vehicle to the exemplary vehicle, which is an entirely different model manufactured in a different year. (Ex. A at p. 111). He cannot produce any published literature supporting his methodology and results and has not bothered to test his opinion. (Ex. A at pp. 154, 164). He is not a metallurgist (Ex. A at pp. 57, 75, 135, 157).

Put simply, Rosenbluth is not qualified to testify regarding the spot welds, and the basis for his opinion regarding the placement of the spot welds on the subject BMW 323i vehicle is not sound or scientifically based. It has not and cannot be verified nor does his supposed methodology take into account the specific factors involved in the accident and is completely unreliable. *See, e.g., Seatrax, Inc.*, 200 F.3d at 372 (failure of appraisal expert to conduct independent analysis of valuation figures was one of the "insurmountable obstacles" in party's attempt to qualify him as an expert); *Boyd v. State Farm Ins. Co.*, 158 F.3d 326, 331 (5th Cir. 1998) (without more than his credential and subjective opinion, an expert's testimony which lacks the materials or data that the opinion is based upon as well as the reasoning process underlying that opinion is inadmissible); *Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106, 1115-16 (5th Cir. 1991) (overruled on other grounds by *Daubert*) (witness's "scientific hunch" which is unexplained or unsupported by any methodology that witness utilized to reach his opinion is not admissible).

In an opinion issued on December 31, 2004, the Texas Supreme Court found that the jury would not be assisted by the unreliable opinion of an expert who failed to conduct tests,

cite studies, or perform calculations in support of his theory, which was not peer-reviewed. *Volkswagen of Am., Inc. v. Ramirez*, ___ S.W.3d ___, 2004 WL 3019227 at *3 - *5 (Tex. 2004). In *Ramirez*, Plaintiffs alleged that a bearing defect in the left rear wheel of the Volkswagen Passat driven by Haley Sterling caused her to crash into a second vehicle, a Mustang, oncoming from the opposite direction of the Passat. *Id.* at *3. According to Plaintiffs, the left rear wheel of the vehicle detached yet stayed tucked in as Sterling lost control of the Passat, which crossed the concrete median. *Id.* The issue was whether the damage to the wheel had occurred before or after the crash. *Id.*

Ronald Walker, plaintiff's accident reconstructionist in *Ramirez*, theorized that the accident occurred because of a defect in the vehicle rather than driver error. *Ramirez*, ___ S.W.3d ___, 2004 WL 3019227 at *3. According to Walker, the wheel of the Passat detached before the crash but was able to stay in the rear wheel well as the Passat traversed over the median, collided with the Mustang, and partially spun. *Id.* To explain his conclusion, Walker cited to the "general" law of physics and accepted scientific and engineering principles, without identifying the specific laws of science and principles or explaining how these generally accepted principles supported his theory. *Id.* at *3-*4, *5. Much like Rosenbluth, he failed to conduct or cite any tests to support his theory and had not read any publications or studies which would corroborate his findings. *Id.* Citing *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 421 (5th Cir. 1987), the Texas Supreme Court refused to take Walker's "say-so" and found that "Walker's reliance on the 'laws of physics', without more, is an insufficient explanation. Although Walker maintains that the methods and formulas he employed are the ones generally accepted and utilized in the accident reconstruction profession, he does not explain how any of the research or tests he relied on support his conclusion." *Id.* at *5.

Because Walker failed to connect between the data he relied on and the opinion offered, the analytical gap rendered his opinion unreliable.

Rosenbluth's opinions lack any scientific basis and should not be presented to the jury. His opinions have no support in widely-accepted science or by methodology that has been accepted or tested. Such unreliable testimony should be excluded.

### III.  PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants BMW OF NORTH AMERICA, LLC and BAYERISCHE MOTOREN WERKE AG pray that the testimony of Gerald Rosenbluth be excluded, and for such other and further relief, both at law and in equity, to which Defendants BMW of North America, LLC and Bayerische Motoren Werke AG may show themselves justly entitled.

Respectfully submitted,

J. MICHAEL MYERS
State Bar No. 14760800
Federal Bar No. 15110
Direct Line:   (210) 731-6309
Direct Fax:   (210) 785-2909
E-mail: jmm@ball-weed.com
BALL & WEED, P. C.
Trinity Plaza II, Suite 500
745 East Mulberry
San Antonio, Texas 78212
(210) 731-6300

ATTORNEY FOR DEFENDANT,
BAYERISCHE MOTOREN WERKE AG

## CERTIFICATE OF CONFERENCE

Counsel for Defendants has conferred with Plaintiffs' counsel in an attempt to resolve this dispute without the necessity of Court intervention. Plaintiffs' counsel opposes this Motion.

J. MICHAEL MYERS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been provided to all known counsel of record as indicated below, on the  19th  day of January, 2005.

Mr. Joe J. Fisher, II
PROVOST * UMPHREY LAW FIRM, L.L.P.
490 Park Street
P.O. Box 4905
Beaumont, Texas 77704
SBN: 00787471
409/835-6000
FAX: 409/813-8609
ATTORNEY FOR PLAINTIFFS

☐ Local Courier Service
☐ Hand Delivery
☐ Facsimile
☐ U.S. Mail
☐ U.S. Certified Mail
☒ Federal Express
☐ Other courier service

J. MICHAEL MYERS